J. ·P. HENDERSON AND ANOTHER V. DAVID AYRES, ADMINIS-
TRATOR, AND OTHERS.

An administrator cannot allow a claim against the estate he represents, if he
is himself the agent of the creditor for its collection; and especially, where
such administrator has an interest in it, contingent on the collection thereof.

A claim against an estate, thus situated, must be established by the judgment
of the chief justice, according to the provisions of Art. 1242, Hart. Dig.
(O. & W. Dig. C. S. Art. 766.)

It devolves on a creditor, seeking to set aside the allowance and approval of a
claim against an estate, upon the ground that it was barred by the statute
of limitations, at the time of the approval, to show that such was the fact.
And where, from the allegations of the petition, it appeared, that on the
obligation which had been approved and allowed, there were acts to be per-
formed before any right of action would accrue upon the covenants of the
intestate, and there was no time for performance specified, and there was
nothing in the evidence to show within what time they ought reasonably to
have been performed, and it was also alleged that the intestate left the
country, and never returned: it was *held*, that there was no error in a judg-
ment against the plaintiff; and that the claim having become a money demand,
before its presentation for allowance and approval, it was not shown to be
barred by the statute of limitations.

ERROR from Walker.   Tried below before the Hon. P. W.
Gray.

This was a suit brought by J. P. Henderson, and Samuel M.
Coley, the appellants, against David Ayres, administrator of the
estate of William K. English, deceased, Isaac Stewart and Wil-
lis Stewart, the appellees, on the 7th of June, 1854, for the pur-
pose of cancelling the approval and allowance by the defendant
Ayres, of the claims of the said Isaac and Willis Stewart against
the estate of the said William K. English, deceased, and to en-
join the sale of certain lands belonging to the said estate, to
satisfy the said claims.

The petition of the plaintiffs alleged that they were creditors
of the said estate, each of them having recovered judgments for
the amount of their respective claims against the said Ayres, as
such administrator; that the said English left the republic,

(now state,) of Texas, on the 5th day of October, 1844, and never returned; that after the death of English, the said Ayres, on the 4th day of September, 1850, obtained letters of administration on the estate aforesaid, with a view to the collection, as agent, of certain pretended claims of his co-defendants against the estate, in which he was to have a contingent interest, if they should be collected, with the fraudulent and corrupt intent of getting said pretended claims classed as acknowledged debts against the estate, and to have the assets of the same appropriated to their payment, to the exclusion of valid, subsisting claims against the said estate, in the hands of others, not so fortunate as to procure the services of said Ayres in the collection of claims against the said succession.

The plaintiffs alleged various acts of collusion between Ayres and his co-defendants, in furtherance of their said fraudulent design, and especially the refusal of the said Ayres to allow the claims of the plaintiffs, whereby they had been required to sue and recover their judgments; and that he had also further delayed the said Henderson, by taking an appeal to the Supreme Court.

They also alleged in their petition, that the claim of Isaac Stewart was presented on the 26th day of May, 1851, and by the said administrator fraudulently allowed; that, in truth, it had been paid off by English in his lifetime, and was only held over him as a cover, to keep off other creditors from his property, and to hinder and defeat them in the collection of their debts; the said claim being for $6246.15, as calculated up to the 24th day of April, 1851, and consisting of an account of the said Isaac Stewart, stated as accruing under the provisions of a certain instrument of writing, executed by the said English, on the 3d day of July, 1841, by which the said English mortgaged to the said Isaac Stewart, certain lands to secure the payment of certain mercantile paper, on which English was liable to the said Stewart for $5608.30, as set forth in the mortgage, and to secure the said Isaac in the payment of $1200, the purchase-money of a certain tract of land in the state of Kentucky, and to protect the said Isaac against the contingency of the failure

in the titles to two leagues of land in Texas, purchased of English, through J. S. Johnson and A. W. Canfield, by the said Isaac, in the winter of 1839, at fifty cents per acre, on account of a doubt as to the validity of the titles.

The conditions of the mortgage provided, that if English should quiet and perfect the titles to the lands, or, if the titles to all of them could not be perfected, should when requested, pay to the said Isaac Stewart, the price paid for them with interest, and the customary costs, which the said Stewart might have expended about them, and should pay the liabilities aforesaid, when required, the obligation shall be null and void. It was also provided in the mortgage, that if the said Isaac Stewart should, at any time, choose to surrender to English, his heirs, executors or administrators, any or all of the aforesaid lands, or either or both of the claims on which English was indebted, he should have the right to do so, and the same should be considered as done, upon notice in writing being given, that such surrender was made; and for the amount of debts, lands, &c., so surrendered, the aforesaid lands should be considered as, and the same were, thereby mortgaged, to secure the payment thereof, with interest, costs, &c., and until default should be made by the said English, he was to retain possession of the said mortgaged lands, and was to pay all taxes and charges thereon. And further, that should the said Stewart, at any time choose to receive the lands which were mortgaged, in lieu of the lands or debts, or any part thereof, he should have the right to do so, by taking the said mortgaged lands at two dollars and fifty cents per acre; and the said instrument authorized the said Stewart to sell any or all of said mortgaged lands, and to receive payment therefor, at that price.

The account or claim of Isaac Stewart allowed by the said Ayres, as administrator aforesaid, and approved on the 26th of August, 1851, was as follows, to wit:

"The estate of William K. English, to Isaac Stewart, Dr.

"For this amount, being the purchase money of one league of land in Texas, sold by said English to said Stewart, in the

winter of 1839, as specified in the within mortgage, which land said English bought of J. S. Johnson, the title to which has failed, and which is hereby and herewith surrendered back to the administrator of said English, $2214 ; interest on the same, from February 1st, 1839, to this 24th day of April, at 6 per cent.,                              $1623 93
                                        2214 00
                                    _____
                                     $3837 93

Joint draft of said W. K. English and B. W. McIntosh, dated New Orleans, February 2d, 1839, and drawn on William Desharoon, of Missouri, payable six months after date, with interest at ten per centum per annum thereon from its maturity, if not then paid; and which was dishonored, and has not been paid, and which is hereby and herewith surrendered back to the administrator.  Interest on the said draft, at ten per cent. per annum, from August 2d, 1839, to 24th day of April, 1851, $6246.15."

A copy of the said mortgage and account was attached to, and made a part of the petition; and it was claimed by the petition, that the account aforesaid was for causes of action that accrued more than four years before the grant of the said administration, and before the same was presented to, and allowed by said administrator, and the plaintiffs insisted, that the same was then barred by the statute of limitations.

The mortgage, in the description given of the mortgaged tract of land, recognized an undivided interest in the same, of $2708\frac{4}{11}$ acres, in the said mortgagee, by virtue of a previous conveyance thereof from the said English to him; and the petition charged, that the said conveyance of said $2708\frac{4}{11}$ acres was alike fraudulent and pretended; that the claim of Willis Stewart for $3820.22, by note dated May 10th, 1846, due one day after date, was barred by the statute of limitations, at the date of its approval and allowance ; the said indebtedness having accrued without the limits of the state of Texas, being dated "Louisville, Ky.," more than four years before the grant of administration

to the said Ayres. The plaintiffs alleged that Isaac Stewart was claiming the land described as $2708\frac{4}{11}$ acres (a part of the mortgaged tract,) as his own, and claimed to hold a lien by virtue of the said mortgage, on the balance of the said tract of land; and that the said Willis claimed to have his debt satisfied out of any residue of the said assets that might remain, after the satisfaction of the claims of the said Isaac. The lands so claimed by the said Isaac, it was also alleged, embraced all the assets of the said estate known to the plaintiff, and that the land was worth about three or four thousand dollars. The plaintiffs alleged a previous attempt to have the said lands sold to pay the claims of the said Isaac, and that he was still endeavoring to have the same sold by order of the County Court. Prayer for injunction, cancellation of the mortgage, and of the pretended conveyance.

The defendants, by their answer, admitted the justice of the plaintiffs' claims, as set forth in their petition; they admitted the acknowledgment, and the approval of the claims of the said Stewarts, and averred that they were just and legal claims against the said estate ; they denied all fraud, combination, and collusion between them as charged, but did not deny the averment of the agency of the said Ayres, and his contingent interest in the claims of the said Stewarts, dependent upon their collection. Isaac Stewart, the mortgagee, denied in his answer, that the said mortgage had ever been paid, settled, or satisfied during the lifetime of English, or that the said English had ever performed any of the acts or covenants specified therein.

Trial by jury was waived, and the cause submitted to the court.

The plaintiffs proved by a witness, a conversation, and admission made by Isaac Stewart, the mortgagee, during the lifetime of the said English, tending to prove that all or nearly all of the said mortgage had been paid and satisfied.

The court decreed that the note to Willis Stewart was, at the time of its presentation to the administrator, barred by limitation ; and therefore annulled, and set aside the acts of the administrator, and the action of the Probate Court, so far as that

claim was concerned ; but approved and affirmed the acts of the administrator and the action of the Probate Court, so far as the claim of the said Isaac Stewart, the mortgagee, was concerned. To reverse this decree, the plaintiff sued out this writ of error.

*A. P. Wiley* and *Sherwood & Goddard,* for the plaintiffs in error.

*H. N. & M. M. Potter* and *Yoakum & Branch,* for defendant in error, Isaac Stewart.

WHEELER, C. J.—The claim of Isaac Stewart, was founded on the covenants in the deed of trust, or mortgage, of the 3d of July, 1841. These related to acts thereafter to be performed, before any right of action would accrue upon them. No time for performance was specified, and there is nothing in the evidence, to show within what time they ought reasonably to have been performed, and when, therefore, the right of action did accrue to the claimant. It is alleged, that English left the country in 1844, and that he never returned. If a right of action had then accrued, it was suspended by the absence of English from the country, until his death, and it does not appear at what time that event took place. (Ayres v. Henderson, 9 Texas Rep. 539; Teal v. Ayres, Id. 588.) It, therefore, does not appear, that the claim was barred at the time of the presentation and allowance by the administrator. It devolved. on the plaintiff to show that the claim was barred, if he would have the allowance and approval of it set aside on that ground.

The evidence relied on, to prove that the claim had been satisfied by English in his lifetime, was too uncertain and inconclusive to require the court to set aside the allowance of it by the administrator, on that ground. These are the grounds which appear to have been relied on upon the trial; and upon neither, do we think there was error in the judgment of the court.

But our attention is now called to another ground, on which, it is insisted, the allowance by the administrator was unauthor-

ized by law, and is void. It is, that the defendants, in their an-swer, do not deny that Ayres was the agent of Stewart, for the collection of his claim against the estate of English, having a contingent interest therein, as alleged in the petition; and being thus the holder, and having an interest in the claim, it is insisted that, as administrator, he could not lawfully allow the claim.

The provision of the law to which we are referred, is the 133d section of the act relating to the estates of deceased persons, (Art. 1242, of the Digest,) which declares, that "the provisions of this act respecting the presentation of claims, shall not be construed to apply to any claim of an executor or administrator against his testator, or intestate, that has not been allowed by some previous executor or administrator of the same estate;" and provides the mode for the establishment of such claims, by the judgment of the chief justice.

From this provision of the statute, it is clear, that an admin-istrator has no authority to allow claims which he holds against the estate; and that such claims can only be approved or estab-lished in the mode therein provided. If, therefore, Stewart had himself administered, as he might well have done, he could not have allowed the claim in question, but must have pursued the prescribed mode for its establishment. Could his attorney in fact, appointed to represent him in the collection of the claim, and beneficially interested in its collection, administer, and allow the claim, and thus bind the estate, and it may be, give precedence to the claim, over the claims of other creditors? It is not easy to perceive how the principal can confer authority on his attorney to do for him an act, which he could not himself perform in person; or how the attorney, representing his prin-cipal, can perform an act for the principal, which the latter, standing in his place, could not himself perform. To the extent of the attorney's interest, he is the holder of the claim in his own right, and to that extent, it is clear, he had no authority to allow the claim. The law does not allow him to be a judge in his own case. His allowance is, in so far, unauthorized and

void. The extent of his interest does not appear. But, I apprehend, his allowance of the claim, as agent for his principal, was equally forbidden by the spirit, if not the letter, of the provision. In the allowance of the claim, he acted in the double capacity of the representative of his principal, and the estate of his intestate. In the former capacity, he represented an interest adverse to the estate and to other creditors, the estate being insolvent. The trust reposed by the law in the administrator, required him to act impartially, as the representative of heirs and distributees, and all the creditors alike. But the interest which he represented as agent, was adverse to his thus acting. It presented a motive, the estate being insolvent, to disallow and defeat, if he could, the claims of other creditors, in order to subserve the interests of his principal, and apply the assets to the claim in which he was personally interested; as it is alleged he has done, and is seeking to do. In forbidding the administrator to allow his own claim, the law intends to remove all motive to his acting thus unjustly in his office, to the hindrance and prejudice of the just rights of others. But if he were allowed to act officially in the allowance of the claim of a particular creditor, being agent and interested in the collection of the claim, he would have the strong motive of interest, to abuse the trust reposed in him by the law, to the injury of those for whose benefit the trust was conferred. Such an agency is incompatible with the trust reposed in the administrator, in passing upon claims against the estate he represents. Holding such an agency, it was his duty to proceed for the establishment of the claim in the mode provided for the administrator, who is the holder of claims against the estate of his intestate. He had no authority to allow the claim; and his allowance of it ought, therefore, to be set aside, and held for nought.

This opinion will require that the judgment be reversed. And the jury having been discharged, we might proceed to render judgment. But this ground was not suggested when the case was first argued in this court. It evidently was not a ground relied on below. It does not appear then to have occurred to

the plaintiff's counsel, that the defendants had failed to answer so material an allegation of the petition, and that, consequently, under our practice, it was to be taken as admitted. The attention of the court does not appear to have been called to it, or the decision would doubtless have been different, unless the defendants had been able to obviate its effect. And as it is possible they might have done so, and ought, at least, to have the opportunity afforded them, to that end, the cause will be remanded for a new trial.

Reversed and remanded.